# United States District Court, Northern District of Illinois

| Name of Assigned Judge or Magistrate Judge | William J. Hibbler | Sitting Judge if Other than Assigned Judge | |
|---|---|---|---|
| **CASE NUMBER** | 01 C 5285 | **DATE** | 8/02/2002 |
| **CASE TITLE** | The Essex Real Estate Group, etal v. River Works, LLC., et al. | | |

**MOTION:** [In the following box (a) indicate the party filing the motion, e.g., plaintiff, defendant, 3rd party plaintiff, and (b) state briefly the nature of the motion being presented.]

Defendant's Partial Motion to Dismiss (#23-1)

**DOCKET ENTRY:**

(1) ☐ Filed motion of [ use listing in "Motion" box above.]

(2) ☐ Brief in support of motion due _____.

(3) ☐ Answer brief to motion due_____. Reply to answer brief due_____.

(4) ☐ Ruling/Hearing on _____ set for _____ at _____.

(5) ☐ Status hearing [held/continued to] [set for/re-set for] on _____ set for _____ at _____.

(6) ☐ Pretrial conference [held/continued to] [set for/re-set for] on _____ set for _____ at _____.

(7) ☐ Trial [set for/re-set for] on _____ at _____.

(8) ☐ [Bench/Jury trial] [Hearing] held/continued to _____ at _____.

(9) ☐ This case is dismissed [with/without] prejudice and without costs [by/agreement/pursuant to]
☐ FRCP4(m) ☐ General Rule 21 ☐ FRCP41(a)(1) ☐ FRCP41(a)(2).

(10) ■ [Other docket entry] For the attached reasons, Defendant's Partial Motion to Dismiss (#23-1) is **GRANTED.** Enter Memorandum Opinion and Order. Status hearing set for 8/29/02 at 9:15 a.m.

(11) ■ [For further detail see order attached to the original minute order.]

| | | | |
|---|---|---|---|
| | No notices required, advised in open court. | | Document Number |
| | No notices required. | number of notices | |
| | Notices mailed by judge's staff. | | |
| | Notified counsel by telephone. | AUG 07 2002 | |
| ✓ | Docketing to mail notices. | date docketed | |
| | Mail AO 450 form. | docketing deputy initials | |
| | Copy to judge/magistrate judge. | | |
| | courtroom deputy's initials | date mailed notice | |
| | | | |

U.S. DISTRICT COURT
CLERK
02 AUG -6 PM 5:28

Date/time received in central Clerk's Office

mailing deputy initials

FILED-ED 10

# IN THE UNITED STATES DISTRICT COURT
## FOR THE NORTHERN DISTRICT OF ILLINOIS
### EASTERN DIVISION

THE ESSEX REAL ESTATE GROUP., LTD. )
 and JAMES E. LEFKOWITZ )
    Plaintiffs )
                             )    NO. 01 C 5285

v. )

                             )    JUDGE WILLIAM J. HIBBLER

RIVER WORKS, L.L.C.; THE DREW )
GROUP; J. MICHAEL DREW; DANIEL J. )
DREW; J. MICHAEL DREW 1998 )
CHILDRENS' TRUSTS; LANCE MAYSTER; )
DWINN, SHAFFER & CO. and )
COLUMN FINANCIAL, INC. )
    Defendants )

DOCKETED

AUG 7 2002

## MEMORANDUM OPINION AND ORDER

The Essex Real Estate Group, Ltd. and James E. Lefkowitz ("Plaintiffs") bring forth allegations against River Works, L.L.C., The Drew Group, J. Michael Drew, Daniel R. Drew, J. Michael Drew 1998 Childrens' Trust, Daniel R. Drew 1998 Childrens' Trust, Lance Mayster, Dwinn, Shaffer & Company, and Column Financial, Inc. ("Defendants") in a four-count complaint stemming from a $150,000 finder's fee Plaintiffs allege they are entitled to as a result of securing financing for a development project.

The Court has before it Defendants' partial motion to dismiss. For the following reasons, Defendants' motion is GRANTED.

### Background

Defendant River Works, a real estate development company, renovated commercial space in Chicago, Illinois, and eventually

1



leased the space to Sara Lee Corporation ("Project"). River Works is owned by two trusts, Defendants J. Michael Drew 1998 Childrens' Trust and Daniel R. Drew 1998 Childrens' Trust. Defendant Drew Group is an Illinois corporation established by J. Michael Drew and Daniel R. Drew that manages River Works.

In the summer of 2000, the Project required permanent mortgage financing. As part of that process, Plaintiff Essex Real Estate Group, Ltd. through Plaintiff Lefkowitz, a mortgage broker, searched for a lender for the Project. The parties reduced the Plaintiffs' efforts to secure financing for the Project to a written document ("Agreement") on October 27, 2000. The Agreement is a one-page letter with the relevant portion providing for a $150,000 finder's fee payable to Plaintiffs.

Plaintiffs maintain they produced a suitable lender, UBS Principal Financial, L.L.C. ("UBS") that materially met the requested mortgage terms. Defendant J. Michael Drew signed a mortgage application with UBS ("River Works-UBS Agreement") for financing of the Project. The relevant portion of the River Works-UBS Agreement precluded River Works from "shopping" the transaction (i.e. River Works must deal only with UBS as a lender and no one else) while completing the process of securing financing through UBS.

Sometime after Plaintiff introduced UBS to River Works, Defendant River Works contends UBS and River Works were unable to reach an

agreement with acceptable terms for mortgage financing. Subsequently, River Works maintains Defendant Lance Mayster, a mortgage broker employed by Defendant Dwinn, Shaffer & Company ("Defendant Dwinn"), obtained suitable financing for the Project from a different lender, Defendant Column Financial, Inc. ("Defendant Column"). Plaintiffs maintain not only that UBS terms were suitable, but also that Defendants Mayster, Dwinn, and Column tortiously interfered with Plaintiffs' contractual and business relationships.

More specifically, in Count I Plaintiffs bring a breach of contract claim against Defendants River Works, Drew Group, J. Michael Drew, Daniel R. Drew, J. Michael Drew 1998 Childrens' Trust, and Daniel R. Drew 1998 Childrens' Trust ("Developer Defendants") for breach of the Agreement. In Count II, Plaintiffs assert a third party beneficiary claim against Developer Defendants for breach of the River Works-UBS Agreement. In Count III, Plaintiffs allege Defendants Mayster, Dwinn, and Column tortiously interfered with Plaintiffs' contractual and business relations when they alternatively secured financing for the Project. In Count IV, Plaintiffs request this Court grant relief based on a quantum meruit (also known as quasi-contract) theory.

## Standard of Review

The function of a Rule 12(b)(6) motion is to test the

3

sufficiency of the complaint, not to determine the merits of the case. *Triad Assocs., Inc. v. Chicago Hous. Authority*, 892 F.2d 583, 586 (7th Cir. 1989). In evaluating the sufficiency of a complaint, the court accepts all well-pleaded factual allegations as true and draws all reasonable inferences in favor of the plaintiff. *Gibson v. City of Chicago*, 910 F.2d 1510, 1520-1521 (7th Cir. 1990). This Court must sustain a complaint unless it determines beyond a doubt the plaintiff can prove no set of facts in support of the claims that would entitle him to relief. *Conley v. Gibson*, 355 U.S. 41, 45-46 (1957). However, a complaint "must allege sufficient facts to outline a cause of action." *Ellsworth v. City of Racine*, 774 F.2d 182, 184 (7th Cir. 1985). Therefore, merely asserting conclusions does not make the allegations in a complaint sufficient to survive a motion to dismiss. *Jones v. Lampe*, 845 F.2d 755, 758 (7th Cir. 1988).

### Analysis

#### Count I:  Breach of Contract

In response to Plaintiffs' breach of contract claim, Defendants J. Michael Drew, Daniel R. Drew, J. Michael Drew 1998 Childrens' Trust, and Daniel R. Drew 1998 Childrens' Trust ("Individual Drew Defendants") bring a motion to dismiss them from Count I and to dismiss Plaintiff Lefkowitz as a party to this litigation.

4

In order for a breach of contract claim to survive a Rule 12(b)(6) motion, the plaintiff must allege that: (1) a contract existed; (2) plaintiff sufficiently performed its contractual obligations; (3) defendant breached its contractual obligations; and (4) as a result of defendant's breach the plaintiff suffered damages. *McClellan v. Banc Midwest, McLean County*, 517 N.E.2d 762, 764 (Ill.App.Ct. 1997); *see also Carl v. Galuska*, 785 F.Supp. 1283, 1289 (N.D.Ill. 1992). In the present motion to dismiss, the Individual Drew Defendants take issue with element one, i.e., they contend a contract never existed between the Individual Drew Defendants and Plaintiffs.

It is undisputed the Individual Drew Defendants and Plaintiff Lefkowitz are not signatories or named parties to the Agreement. Although Defendant J. Michael Drew's signature appears on the Agreement, he signed only in his official capacity as President of the Drew Group, which manages River Works, and thus not in his individual capacity.[1] (Compl. Ex. A.) Likewise, Plaintiff Lefkowitz signed the Agreement in his official capacity as President of Essex Real Estate Group, Ltd. and not in his individual capacity.[2] (Compl. Ex. A.)

---

[1] Immediately above the Defendants' signature line, the Agreement lists Riverworks, L.L.C. and then below that indicates "By: the Drew Group, Inc., Its Manager." Furthermore, below Defendant Michael Drew's signature is "J. Michael Drew, President."

[2] Immediately above the Plaintiffs' signature line, the Agreement indicates "Essex Real Estate Group" and below Plaintiff Lefkowitz signature is "James E. Lefkowitz, President."

5

Furthermore, no language in the content of the Agreement suggests the Individual Drew Defendants are liable to Plaintiffs or that Plaintiff Lefkowitz is entitled to payment individually. If the Individual Drew Defendants are a party to the agreement, their acceptance would be a prerequisite to the formation of a valid contract and should be evidenced by their signatures. *Smith v. Clark Equipment Co.*, 136 Ill. App. 3d 800, 804 (Ill. App. Ct. 1985). Therefore, Plaintiffs' allegations must shift to another basis for liability because under a standard contract analysis, neither Plaintiff Lefkowitz nor the Individual Drew Defendants are signatories or named parties to the Agreement. *Id.* (finding plaintiff is not a party to the agreement because plaintiff is not a signatory to the agreement and proceeded to consider the claim under a third party beneficiary theory).[3]

In terms of Plaintiff Lefkowitz, the failure to be a signatory or a named party in his individual capacity requires the Court dismiss him as a party. In *Continental Illinois National Bank & Trust Co. of Chicago v. Stanley*, Continental brought suit against Stanley to recover on Stanley's personal guaranty of loans made to companies controlled by Stanley. 585 F.Supp. 1385 (N.D. Ill. 1984). In Stanley's various common-law counterclaims, he argued the same factual situation that gave rise to a cause of action for

---

[3] This Court analyzes Plaintiffs' third party beneficiary claims separately in Count II.

6

the corporation can also give rise to separate causes of action on his behalf. *Id.* at 1388. The court found Stanley's allegations were the result of injuries suffered by the company and not based on any independent contractual relationship he had with plaintiff Continental. *Id.* Following the well-established rule that an alleged injury to a corporation accrues a cause of action to the corporation and not the individual stockholders, the court granted the plaintiff's motion to dismiss when it determined Stanley had no standing in his individual capacity. *Id.*

Similarly, the cause of action for the alleged breach of contract in the present case accrues only to Plaintiff Essex not to Plaintiff Lefkowitz in his individual capacity. Plaintiff Lefkowitz attempts to rely on the same factual allegations giving rise to Plaintiff Essex's presumed injury and likewise presents no evidence of an independent contractual relationship with any of the Defendants named in the complaint. Therefore, the Court must dismiss Plaintiff Lefkowitz as a party to this lawsuit. [4]

The Individual Drew Defendants, however, are not so easily dismissed from the present lawsuit. A corporation is a separate and distinct legal entity from its shareholders, directors, and officers, and generally from other corporations with which it may be affiliated. *Van Dorn Co. v. Future Chem. & Oil Corp.*, 753 F.2d

---

[4] Because Plaintiff Lefkowitz is not entitled to relief in his individual capacity, this Court when referencing the Plaintiff from this point forward in the opinion will only be referring to Plaintiff Essex unless otherwise indicated.

565, 569 (7th Cir. 1985).    Although exceptions exist, the courts disfavor piercing the corporate veil and stringently apply its requirements. *Bright v. Roadway Servs., Inc.*, 846 F.Supp. 693, 700 (N.D. Ill. 1994).  Here, Plaintiff must pierce the corporate veil to state a claim against the Individual Drew Defendants.  To pierce the corporate veil, Plaintiff must plead: (1) such a unity of interest and ownership that the separate personalities of the corporation and the individual no longer exist; and (2) the circumstances are such that adherence to the fiction of a separate corporate existence would sanction a fraud or promote injustice. *Sea-Land Servs. v. Pepper Source*, 941 F.2d 519, 520 (7th Cir. 1991).

In determining whether a corporation is so controlled by another to justify disregarding their separate identities, the Court considers: (1) the failure to maintain adequate corporate records or to comply with corporate formalities; (2) the commingling of funds or assets; (3) undercapitalization; and (4) one corporation treating the assets of another corporation as its own. *Sea-Land Servs.*, 941 F.2d at 521.

In *Laborers' Pension Fund v. Paragon Pool Construction Inc.*, the plaintiff attempted to  hold the defendant personally liable and alleged the defendant acted as the chief operating officer of the company and owned and operated the company for his exclusive benefit.  No. 00 C 2408, 2001 WL 218642, at *2, (N.D. Ill. Jan. 16,

8

2001). The court noted "these statements could probably be made about single-owner corporations . . . as the closely-held corporation is run very much like an individual proprietorship. But the law nonetheless recognizes the separate corporate entity." *Id.* Determining the allegations were conclusionary and insufficient, the court granted defendant's motion to dismiss him from the proceedings. *Id.* at *3.

In *Classic Fire & Marine Ins. Co. v. Illinois Ins. Exchange*, No. 97 C 1256 , 1997 WL 767290 (N.D. Ill. Dec. 3, 1997), counter-plaintiff Illinois Insurance Exchange ("Exchange") alleged Defendant Lobo Claims Management, Inc. ("Lobo") was liable for failing to indemnify them and in turn, Lobo moved to dismiss on the grounds that it was not a party to the agreements forming the basis of the Exchange's counterclaim. 1997 WL 767290, at *2-3. Since Lobo was a not a signatory to the agreements, the court considered whether an alter ego theory would apply, and thus allow the claim to survive. *Id.* at *5. The court granted Lobo's motion to dismiss and determined: (1) Exchange's pleadings were conclusionary; (2) they failed to allege Lobo was a mere instrumentality of the other corporations; and (3) they failed to show how the recognition of Lobo as a separate entity would sanction a fraud or promote injustice. *Id.*

In *Bright*, the court considered whether a former employee's

parent corporation is liable for discrimination alleged to have occurred while the former employee was employed by its subsidiary. *Bright*, 846 F.Supp. at 695. The former employee argued the corporate veil should be pierced and the parent corporation held liable because it "owns and operates" its subsidiary and it "ratified and affirmed" all acts listed in the complaint. *Id.* The *Bright* court determined the plaintiff's conclusionary allegations were insufficient as a matter of law and therefore dismissed the parent corporation from the lawsuit. *Id.* at 701.

In *Hornsby v. Hornsby's Stores, Inc.*, the court contemplated whether the defendant Stores was the alter ego of two other corporations, thereby justifying the piercing of the corporate veil and making the other two corporations liable to the plaintiffs for the Store's breach of a lease agreement. 734 F.Supp. 302, 306-07 (N.D. Ill. 1990). Specifically, the plaintiffs alleged the Store and the other two companies shared the same office space, the same office staff, and the same telephone number. *Id.* at 306. The court held these allegations were insufficient to state a cause of action because Plaintiffs failed to allege any facts suggesting the Store was a mere instrumentality of the other companies. *Id.* at 308.

In the case at bar, Plaintiff asserts only two relevant allegations: (1) "[t]he Individual Drew Defendants. . . are owners

of the Drew Group and exercise such control over the Drew Group, River Works and the Trusts as to be and constitute alter egos, without actual separate corporate identity" (Compl. ¶ 7) and (2) "the Individual Drew Defendants were the managers of the property receiving substantial compensation; and acted as the developer of the property receiving substantial compensation and in all other facts acted as if they were running the property for their own benefit." (Pls.' Reply Br. at 3.) Plaintiff's conclusionary allegations do not suggest any of the four factors are present to establish River Works or the Drew Group are mere instrumentalities of the Individual Drew Defendants. Moreover, Plaintiff's allegations are significantly less defined than those outlined in *Hornsby* and even then the court found those allegations insufficient as matter of law and subsequently granted the motion to dismiss. Therefore, Plaintiff fails to meet his pleading requirement with regard to element one.

Plaintiff similarly fails to establish how upholding River Works as a separate corporate entity will sanction a fraud or promote injustice. *See Sea-Land Servs.*, 941 F.2d at 522-24 (after extensively analyzing relevant Illinois case law, the court found the inability to collect a debt is not sufficient to pierce the corporate veil; rather, a "wrong" beyond intentional asset and liability-shifting is required).

Plaintiff alleges no facts in the complaint to suggest sustaining River Works as a corporate entity would create a fraud, injustice or wrong. In the reply brief, Plaintiff alludes to intentional asset-shifting when he alleges "River Works … and the . . . Childrens' Trusts were formed to . . . shield and hide the assets of the Individual Drew Defendants for an existing obligation to the U.S. Department of Treasury for unpaid . . . taxes." (Pls.' Reply Br. at 3.) [5] Plaintiff fails to demonstrate how suggestions of asset-shifting to avoid paying unpaid corporate taxes merits piercing the corporate veil and assigning individual liability with regard to the finder's fee in the Agreement at issue in the present litigation. Further, Plaintiff does not allege River Works cannot pay the requested remedy in the event the court determined Plaintiff was entitled to such relief. Although such an allegation is not by itself sufficient to justify breaching corporate protections, an argument of a judgment proof defendant would at least show Plaintiff sought to establish fraud or injustice and may have provided some link to the asserted asset-shifting theory. Rather, Plaintiff's allegations are insufficient because they merely involve intentional asset-shifting. *See Sea-Land Servcs.*, 941 **F.**2d at 522-24.

Accordingly, the Individual Drew Defendants are not

---

[5] It is not necessary for this Court to determine whether it is appropriate to make these allegations in the reply brief because Plaintiff's allegations are nevertheless insufficient as a matter of law.

signatories or named parties to the Agreement and Plaintiff fails to sufficiently state a case for piercing the corporate veil; therefore, Count I against the Individual Drew Defendants must be dismissed with prejudice. Additionally, Plaintiff Lefkowitz is dismissed as a party to these proceedings because he is not a signatory or a named party in his individual capacity to the Agreement.

### Count II: Breach of Third Party Beneficiary Agreement

In Count II, Plaintiffs Essex and Lefkowitz assert they are third-party beneficiaries of the River Works-UBS Agreement, thereby entitling Plaintiffs relief as a result of Developer Defendants alleged contractual breach of the River Works-UBS Agreement. Developer Defendants, without conceding as such, do not presently take issue with whether a breach actually occurred; rather, they argue Plaintiffs are not third party beneficiaries in any event.

It remains undisputed that on the face of the River Works-UBS Agreement there is no express mention of Plaintiffs. Accordingly, the Court's analysis must shift to whether in the absence of express language, Plaintiffs are nevertheless third party beneficiaries. For a third party to have a right to sue, the contract must be for the plaintiff's direct benefit and the contract must affirmatively make this clear. *E.B. Harper & Co. v. Nortek, Inc.*, 104 F.3d 913, 920 n.4 (7th Cir. 1997)(noting a broker

13

could not be considered a third party beneficiary of a Stock Purchase Agreement between two businesses where the broker was only mentioned in the contract incidentally and the sale of the business was not for the broker's direct benefit). If the intent is not express on the face of the contract, then "its implication at least must be so strong as to be practically an express declaration." *Id.* "[B]rokers are generally not third-party beneficiaries of sales agreements to which they are not a party." *Id.; see also Banco del Estado v. Navistar Int'l Trans. Corp.*, 954 F.Supp. 1275 (N.D.Ill. 1997). In the present case, Plaintiff is not referenced in the River Works-UBS Agreement from which it seeks recovery as third-party beneficiaries and Plaintiffs' benefit would have been relatively incidental. *Id.* (the court found the plaintiff should alternatively rely on the duties created by his own agreement and could not avail himself as a third party beneficiary of the other parties' agreement).

The River Works-UBS Agreement cannot be interpreted as explicitly or implicitly suggesting it was undertaken for Plaintiffs' benefit; rather, the separate and distinct agreement benefitted River Works to secure financing and UBS to be their chosen lender. Although the River Works-UBS Agreement contains a paragraph representing that Defendants will work solely with UBS as their lender, the damages for breach of that agreement expressly

provide for enforcement by UBS only. The right to enforce the River Works-UBS Agreement belongs to UBS alone; Plaintiffs' remedy would lie only under its own Agreement with Defendant River Works. Accordingly, the Court dismisses Count II in its entirety with prejudice.

Count III: Tortious Interference

Plaintiff alleges tortious interference claims against Defendants Mayster, Dwinn, and Column.[6] In response to Plaintiff's allegations, Defendant Mayster argues this Court should dismiss Count III against him in his individual capacity because (1) he was acting within the scope of his employment with Dwinn, Shaffer & Company and (2) Plaintiff has failed to state a claim.

"A qualified privilege bars liability for tortious interference." *MGD, Inc. v. Dalen Trading Co.*, 230 Ill.App.3d 916, 920 (Ill. App. Ct. 1992). Generally, privilege exists when the defendant acted in good faith to protect an interest or uphold a duty. *Delloma v. Consolidation Coal Co.*, 996 F.2d 168, 171 (7th Cir. 1993). Further, the defendant's conduct must be limited in scope to that purpose, on a proper occasion, in a proper manner, and to the proper parties only. *Id.*

In the present case, an affidavit confirms Defendant Mayster is a broker employed by Defendant Dwinn (Def. Mayster's Aff.) and

---

[6] This Court has granted the motion to dismiss Plaintiff Lefkowitz, as discussed in Count I, and therefore for the same reasons he is unable to recover under Count III.

as such he owed a duty, as an employee, to Dwinn.  Plaintiff pleads no facts to suggest otherwise.[7]  A component of Defendant Mayster's employment as a mortgage broker is introducing Developer Defendants to Defendant Column and he was therefore acting within the proper scope of that duty.  Likewise, Developer Defendants were proper parties on the proper occasion because they were commercial real estate developers searching for a lender for the Project.  Plaintiff presents no facts indicating Defendant Mayster acted in an improper manner while exercising his duty.  Therefore, this Court determines Defendant Mayster's conduct is privileged.

A closely analogous qualified privilege exists to protect corporate officers from liability for decisions made on behalf of the company.  *3COM Corp. v. Elec. Recovery Specialists, Inc.*, 104 F.Supp.2d 932, 938 (N.D. Ill. 2000).  To surmount the qualified privilege, a plaintiff must show the corporate officer's action was done without justification or with actual malice.  *MGD Inc.*, 230 Ill.App.3d at 920.  To plead malice in the context of tortious interference with contractual relations, Plaintiff must establish Defendant Mayster intentionally injured Plaintiff and his desire to

---

[7] Plaintiff's tortious interference allegations consist of the following:

Broker Defendants and Column, directly and by their respective agents, jointly and severally, have knowingly and tortiously interfered with Plaintiffs' contractual and advantageous business relationships, both those directly with Defendant Developers and, indirectly between UBS-Defendant Developers, whence Plaintiffs are third-party beneficiaries, and Broker Defendants and Column have, jointly and severally, thus purposefully caused injury to Plaintiffs, under circumstances where they might reasonably have expected that their conduct would cause economic injury to Plaintiffs, damaging the Plaintiffs in the amount of One Hundred Fifty Thousand Dollars ($150,000). (Compl. ¶ 33.)

harm was unrelated to the interests of corporation. *Id.* Here, Plaintiff pleads no facts to suggest Defendant Mayster acted without justification, with actual malice, and contrary to the interests of Defendant Dwinn; therefore, Plaintiff fails to overcome the qualified privilege. Accordingly, this Court dismisses Defendant Mayster in his individual capacity from these proceedings.

In addition, Plaintiff fails to state a claim for tortious interference under either a contractual or business relations theory. The Court notes Plaintiff's complaint alleges both interference with contract and interference with business relations. (Pls.' Compl. at 6.) "Interference with contract and interference with business relations (sometimes called prospective economic advantage) are related torts." *Int'l Mktg., Ltd. v. Archer-Daniels-Midland Co.*, 192 F.3d 724, 731 (7th Cir. 1999).

To state a claim for tortious interference with contract, Plaintiff must plead: (1) a valid and enforceable contract existed between the plaintiff and a third party; (2) the defendant's awareness of the contractual relationship; (3) the defendant's intentional and unjustified inducement of a breach of the contract; (4) a breach by the third party, caused by the defendant's wrongful conduct; and (5) damages as a result of the breach by the third party. *Id.*

Plaintiff fails to allege Defendant Mayster's conduct of introducing Defendant Column to Defendant River Works caused River Works to breach the Agreement.[8] Plaintiff merely asserts Broker Defendants engaged the Developer Defendants to "shop" the loan. (Compl. ¶ 21.) However, that paragraph refers to the River Works-UBS Agreement and not Plaintiff's Agreement to which Plaintiff applies the tortious interference with contract claim. Plaintiff also fails to allege Defendant Mayster's conduct was unjustified.

When the plaintiff's economic expectancy has not been reduced to a contract yet, one can still recover under the theory of tortious interference with business relations. *Int'l Mktg., Ltd.,* 192 F.3d at 731. Under this theory, Plaintiff must plead: (1) his reasonable expectation of entering into a valid business relationship; (2) the defendant's knowledge of plaintiff's expectancy; (3) purposeful interference by the defendant which prevents the legitimate expectancy from solidifying into a valid business relationship; and (4) damages to plaintiff as a result of defendant's interference. *Id.*

Competition is a complete defense against tortious interference with business relations claims. *Id.* "Competition, which though painful, fierce, frequently ruthless, sometimes

---

[8] As discussed above, Plaintiff is not a third-party beneficiary to the River Works-UBS Agreement and therefore any tortious interference claims regarding the River Works-UBS Agreement do not entitle Plaintiff to relief. For purposes of Count III, the remaining allegations involve the Agreement only.

Darwinian in its pitilessness, is the cornerstone of our highly successful economic system. Competition is not a tort." *Id.* A competitor is ineligible for the competition defense only if its conduct is motivated solely by spite or ill will. *Id.*

In the present case, Defendant Mayster asserts the defense of competition. (Defs.' Mot. Dismiss at 12.) Plaintiff fails to make any allegations that Defendant Mayster was motivated by spite or ill will and thus, he fails to counteract the defense. *Id.* at 732 (dismissing a claim of tortious interference with business relations based on the defense of competition when plaintiff did not counteract defense by pleading allegations of ill will or spite).

Accordingly, Plaintiff has failed to state a claim for tortious interference against Defendant Mayster in his individual capacity under either a contractual or business relations theory.

### Count IV:  Quantum Meruit

In Count IV, Plaintiff requests relief under a quantum meruit theory.  Plaintiff's only factual assertion to support this claim is "Plaintiff Lefkowitz did not sign the Agreement." (Pls.' Reply Br. at 8.)  In response, Defendants' argue Count IV should be dismissed because a contract dictates the terms of the parties' deal.

Illinois law does not authorize recovery on a theory of quasi-

contract when a real contract governs the parties' dealings. *Murray v. ABT Assoc.*, 18 F.3d 1376, 1379 (7th Cir. 1994). The Agreement is the real contract that applies to the present case. Although the parties may dispute whether a breach of the Agreement factually occurred, what the terms of the Agreement are, or which parties are bound to the Agreement, it is nevertheless a real contract. Liability or non-liability flows from the Agreement at issue.[9] On this point alone, Plaintiff's quantum meruit claim fails as a matter of law.

Further, Illinois law does not allow quasi-contract recovery when a plaintiff seeks such recovery just because a specific subject matter is not covered in the express contract. *Borowski v. DePuy, Inc.*, 850 F.2d 297, 301 (7th Cir. 1988). In the present case, Plaintiff cannot recover under a quantum meruit theory because Plaintiff does so only to redress an area not discussed in the Agreement: breach of the Agreement by "shopping" the terms of the loan and the damages resulting from such a breach. Accordingly, the Court dismisses Count IV in its entirety with prejudice.

### Conclusion

For the above stated reasons, the Court GRANTS Defendants'

---

[9] As an initial matter this Court determined Plaintiff Lefkowitz and the Individual Drew Defendants are not parties to the Agreement and therefore no relief flows to Plaintiff Lefkowitz and no liability attaches to the Individual Drew Defendants.

motion to dismiss in the following areas: (1) the Individual Drew
Defendants are dismissed from Count I; (2) Count II is dismissed
with prejudice; (3) the tortious interference claims in Count III
are dismissed with respect to Defendant Mayster; (4) Count IV is
dismissed with prejudice; and (5) Plaintiff Lefkowitz is dismissed
as a party to these proceedings.

**IT IS SO ORDERED.**
**DATE:** August **2,** 2002

_Wm. J. Hibbler_
Hon. William J. Hibbler
**United States District Court Judge**